UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| VASSOS MARANGOS, pro se, | : | |
| Plaintiff, | : | Civil Action No. 3:07-cv-5937-FLW |
| v. | : | |
| CECILY CATHERINE SWETT, et al., | : | **OPINION** |
| Defendants. | : | |

**WOLFSON, United States District Judge:**

Presently before the Court are motions by Defendants Cecily Catherine Swett ("Swett"); Land Options Inc. ("Land Options"); Select Portfolio Servicing Inc.("Select Portfolio"); Option One Mortgage Corp. ("Option One"); and Performance Credit Corp.("Performance Credit"),[1] to dismiss all claims, pursuant to Fed. R. Civ. P. 12(b)6, of Plaintiff Vassos Marangos, pro se.[2]

---

[1] Plaintiff improperly plead Performance Credit as "Encore Credit" in his Complaint.

[2] APEX Financial Corp. ("APEX") is also a defendant in this matter but has not joined the other defendants in filing a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). Plaintiff offers evidence of two attempts to serve APEX by mail, both of which were returned undeliverable. Certification of Vassos Marangos, Ex. D. However, Plaintiff made no further attempt to perfect service on APEX. Plaintiff asserts that APEX "went under in the mortgage crisis and is allegedly now being investigated by the Florida Banking Commission." Pl.'s Brief, pg. 3. The Federal Rules of Civil Procedure require a plaintiff to serve defendants within 120 days of commencement of a cause of action. Fed. R. Civ. P. 4(m) ("If a defendant is not served within 120 days after the complaint is filed, the court — on motion or on its own after notice to the plaintiff — must dismiss the action without prejudice against that defendant or order that

Initially, Plaintiff alleges, pursuant to 42 U.S.C. § 1983, that Defendants violated his Fourteenth Amendment right by depriving him of property rights following the refinancing of his home. Plaintiff also asserts that Defendants are in violation of Federal Truth in Lending Act ("TILA"), 15 U.S.C. § 1601, et seq. In addition, Plaintiff further alleges a violation of 18 U.S.C. § 1962(c), contending that Defendants conspired to ruin him financially through a fraudulent scheme arising from Plaintiff's refinancing of his home. Plaintiff additionally alleges several state law claims of fraud, deception, and invasion of privacy against Swett. Finally, Plaintiff asserts state law claims against Defendants, including negligent and intentional infliction of emotional distress. For the reasons that follow, the Court grants Defendants' motions to dismiss all federal claims and declines to exercise supplemental jurisdiction over Plaintiff's state law claims.

**I. Facts**

Since Defendants move to dismiss Plaintiff's claims pursuant to Fed. R. Civ. P. 12(b)(6), the following version of events assumes Plaintiff's allegations to be true. Additionally, the Court incorporates Plaintiff's factual allegations as stated in this Court's Opinion dated September 29, 2008, dismissing Plaintiff's claims with prejudice against Defendant the Honorable Michael J. Guadagno, New Jersey Superior Court Judge ("Judge Guadagno"). The Court will recount facts only relevant to this Motion.

Plaintiff alleges that his former spouse, Swett, used information from their divorce

---

service be made within a specified time."). Plaintiff commenced this action on December 13, 2007. As of September 25, 2008, which has been more than 120 days, Plaintiff has offered no proof of service. Accordingly, pursuant to Fed. R. Civ. P. 4(m), the Court on this date in a separate Notice of Call for Dismissal is providing notice of its intent to dismiss the action unless Plaintiff can establish that service was effected within 120 days of the commencement of the action or good cause is shown for failure to do so.

proceeding in January 2006, to put an "illegal" lis pendens on Plaintiff's house in February 2006. (Compl. ¶¶ 35-36.) Although Plaintiff was represented by counsel in his matrimonial case, Plaintiff is proceeding in the present matter as a pro se litigant.[3] Plaintiff returned to New Jersey from California in 2006. Upon his return, Plaintiff decided to refinance one of the marital homes through APEX in order to settle his debts and pay for his living expenses. (Compl. ¶ 31.) Plaintiff admits he signed his loan papers in July 2006 "without even looking at them." (Compl. ¶ 33.) Plaintiff alleges, however, APEX did not inform him there was a lis pendens on the home at that time. (Compl. ¶ 124.) After learning of the lis pendens, in August 2006, Plaintiff "requested a meeting with the Monmouth County Prosecutor located in Freehold[,] NJ where he reported the unlawful Lis pendens as a financial crime and asked for an investigation." (Compl. ¶ 45.)

Plaintiff alleges that sometime in September 2006, Land Options, on its own accord, withdrew $19,331 from Plaintiff's frozen funds and distributed it "to the Child Support agency." (Compl.¶ 41.) In October 2006, Select Portfolio came into the picture, purchasing Plaintiff's refinance loan from Option One. (Compl. ¶ 63.) During a recess at a court hearing held on March 14, 2007, Plaintiff alleges Judge Guadagno contacted Land Options, ordering it to release $16,395 to Swett from the refinancing funds held in escrow. (Compl. ¶ 67.) Plaintiff further alleges that Judge Guadagno contacted Land Options on one other occasion to inquire as to the amount still held. (Compl. ¶ 92.)

Plaintiff filed this Complaint in United States District Court for the District of New Jersey on

---

[3]The Court is obligated to construe pro se pleadings liberally. Haines v. Kerner, 404 U.S. 519, 520 (1972); Dluhos v. Strasberg, 321 F.3d 365, 369 (3d Cir. 2004) ("[The Court will] apply the applicable law, irrespective of whether the pro se litigant has mentioned it by name.").

December 13, 2007. (Compl. ¶¶ 37-38.) Plaintiff contends that because APEX "withheld information from plaintiff during the application process [to refinance Plaintiff's house] that there was an (illegal and secret) [l]is pendens on [P]laintiff's house [of which Plaintiff was not aware.]" (Compl. ¶ 33.) Plaintiff seeks damages from Defendants, "individually, jointly and severally" in relation to this count of the Complaint. (Compl. ¶ 29.) Plaintiff, however, did not include a request for rescission in his prayer for relief. (See Compl. ¶¶ 29-30.) On February 4, 2008, Land Options filed a Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6). Other Defendants followed suit, including Swett on February 21, 2008, Select Portfolio and Option One on March 27, 2008, and Performance Credit on March 28, 2008. Plaintiff filed a cross-motion for the appointment of a special prosecutor on April 7, 2008, which Plaintiff withdrew with this Court's approval on September 16, 2008.

**II. Discussion**

   **A. Standard of Review**

When reviewing a motion to dismiss on the pleadings, courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (citation and quotations omitted). Recently, in Bell Atlantic Corporation v. Twombly, 127 S.Ct. 1955 (2007), the Supreme Court clarified the 12(b)(6) standard. Specifically, the Court "retired" the language contained in Conley v. Gibson, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Id. at 1968 (quoting Conley, 355 U.S. at 45-46).

Instead, the factual allegations set forth in a complaint "must be enough to raise a right to relief above the speculative level." Id. at 1965. As the Third Circuit has stated, "[t]he Supreme Court's Twombly formulation of the pleading standard can be summed up thus: 'stating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element. This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." Phillips, 515 F.3d at 234 (quoting Twombly, 127 S.Ct. at 1965).

**B. Plaintiff's 42 U.S.C. 1983 Claims**

Plaintiff alleges, pursuant to 42 U.S.C. § 1983, that Defendants violated his Fourteenth Amendment property rights. Specifically, Plaintiff asserts that Defendants were acting under the color of state law when they unlawfully transferred the majority of Plaintiff's funds held in escrow to Swett. In response, Defendants contend that Plaintiff's 1983 claim should be dismissed because none of the defendants were acting under the color of state law as required by 42 U.S.C. § 1983.

Section 1983 provides, in pertinent part, that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. The law provides citizens with "an avenue of recovery for the deprivation of established federal constitutional and statutory rights." Salley v. Rodriguez, No. 07-4914, 2008 WL 65106 at * 4 (D.N.J. Jan. 4, 2008); see also Groman v. Twp. of Manalapan, 47 F.3d 628, 633

5

(3d. Cir. 1995). To state a claim under 42 U.S.C. § 1983, Plaintiff must demonstrate Defendants acted under "color of [state] law" to deprive him of an enumerated right secured by the United States Constitution or its laws. Salley, 2008 WL 65106 at *4. "[T]he essence of section 1983's color of law requirement is that the alleged offender, in committing the act complained of, abused a power or position granted by the state." Hill v. Borough of Kutztown, 455 F.3d 225, 241 (3d Cir. 2006) (quoting Bonenberger v. Plymouth Twp., 132 F.3d 20, 24 (3d Cir. 1997)).

In order to establish the color of state law element, a Plaintiff must demonstrate "there is such a "close nexus between the State and challenged action that private behavior may be fairly treated as that of the State itself." Brentwood Acad. v. Tennessee Secondary Sch., 531 U.S. 288, 295 (2001) (citation omitted); Groman, 47 F.3d at 638 ("The color of state law element is a threshold issue; there is no liability under 1983 for those not acting under the color of state law."). Thus, extensive government regulation does not transform a private entity into a state actor for the purposes of 42 U.S.C. § 1983. Bailey v. Harleysville National Bank & Trust, 188 Fed. Appx. 66, 67-68 (3d Cir. 2006) (quoting Jackson v. Metro. Edison Co., 419 U.S. 345, 350 (1974)). Moreover, financial entities, notably banks, have not been found to be state actors, "even when their complained-of actions have been explicitly authorized by the state." Id. (citation omitted).

In the instant matter, Plaintiff merely restates § 1983's language in his Complaint, that "[a]ll Defendants herein were acting under color of state law when they violated Plaintiff's fundamentally secured rights and committed criminal acts against him." (Compl. ¶ 117.) Defendants include a private citizen and four private financial companies. As to Performance Credit, Land Options, Option One, and Select Portfolio, Plaintiff alleges no relationship or connection, let alone a "close nexus," between these entities and any governmental agency or

6

official. Indeed, Plaintiff concedes that Select Portfolio is named in this Complaint solely as a successor in title to Plaintiff's loan originally held by Option One. (Compl. ¶ 34.) Moreover, Plaintiff alleges no conduct on the part of these companies that resembles a quasi-governmental function or action that rises to the level of state action.  Accordingly, Plaintiff's § 1983 claims fail as to these defendants because their actions were not taken under the color of state law; they will be dismissed with prejudice.

As to Swett, Plaintiff alleges his former spouse was instrumental in securing his financial ruin. Specifically, Plaintiff alleges Swett manipulated state court proceedings to financially better herself at his expense.  However, "[f]iling a lawsuit in state court, is not for 1983 purposes 'state action;' nor does it turn a private citizen into a state actor." Gueson v. Feldman, No. 00-1117, 2001 WL 34355662, at *10 (E.D. Pa. Nov. 31, 2001).  The Supreme Court, in reiterating this unwavering principle, stated:

> We have never held that the mere availability of a remedy for wrongful conduct, even when the private use of that remedy serves important public interests, so significantly encourages the privacy activity as to make the State responsible for it.  See Tulsa Professional Collection Services, Inc. v. Pope, 485 U.S. 485, 109 S.Ct. 1340, 99 L.Ed.2d 565 (1988) ("Private use of state-sanctioned private remedies or procedures does not rise to the level of state action.") . . . It bears repeating that a finding of state action on this basis would be contrary to the "essential dichotomy," Jackson, supra, at 349, 95 S.Ct. 449, between public and private acts that our cases have consistently recognized.

American Manufacturers Mutual Insurance Co. v. Sullivan, 526 U.S. 40, 53 (1999).  To hold otherwise would expose any private citizen seeking to redress harms in state-sanctioned court proceedings to civil liability under 42 U.S.C. § 1983.  Swett sought division of marital assets and enforcement of court orders mandating that Plaintiff pay child support and alimony.  Further, Plaintiff's assertion that his former spouse acted improperly during the couple's divorce

proceeding does not convert her private behavior into state-sponsored activity. Accordingly, Plaintiff's § 1983 claims as to Swett are dismissed with prejudice.

### C. Plaintiff's Truth in Lending Act ("TILA") Claims

In addition to his § 1983 claim, Plaintiff alleges he "was never informed that Swett had put an unlawful Lis Pendens against his house when he signed the mortgage loan documents," in violation of "Federal TILA law."[4] (Compl. ¶ 124.) Plaintiff seeks damages from Defendants, "individually, jointly and severally" in relation to this count of the Complaint. (Compl. ¶ 29.) Plaintiff contends that: (1) his TILA claims remain within the three-year period provided for a right to rescission, and thus still viable; and (2) even though more than one year has passed between the TILA violation and the date of his complaint, the circumstances of the TILA violations committed by Defendants justify an equitable tolling of the statute of limitations. In response, Defendants contend that Plaintiff's TILA claim should be dismissed because the applicable one year statute of limitations bars Plaintiff's claim.

TILA provides "when a loan made in a consumer credit transaction is secured by the borrower's principal dwelling, the borrower may rescind the loan agreement if the lender fails to deliver certain forms or to disclose important terms accurately." Beach v. Ocwen Fed. Bank, 523 U.S. 410, 411 (1998) (citing 15 U.S.C. § 1635). This right of rescission, unlike TILA's one-year

---

[4] See Jefferies v. Ameriquest Mortg. Co., 543 F. Supp. 2d 368, 378 (E.D. Pa. 2008) ("TILA is a strict liability, remedial statute that is to be construed liberally in favor of borrowers. Smith v. Fid. Consumer Disc. Co., 898 F.2d 896, 898 (3d Cir. 1990). The purpose of TILA is 'to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices.' 15 U.S.C. § 1601(a). 'Accordingly, [TILA] requires creditors to provide borrowers with clear and accurate disclosures of terms.' Beach v. Ocwen Fed. Bank, 523 U.S. 410, 412, 118 S. Ct. 1408, 140 L. Ed. 2d 566 (1998).")

statute of limitations, "'shall expire' in the usual case three years after the loan closes or upon the sale of the secured property, whichever date is earlier." Beach, 523 U.S. at 411; see also 15 U.S.C. § 1635(f). Plaintiff argues, and is correct, that "TILA law rescissions can be implemented up to [three] years after [the] date of [the] agreement if fraud and deception [are] involved" in that the lender, by committing fraud, would not be complying with TILA's disclosure requirements. [5] Br. Pl. Supp. Opp. Mot. Dismiss, 51. Plaintiff contends that because APEX "withheld information from plaintiff during the application process [to refinance Plaintiff's house] that there was an (illegal and secret) [l]is pendens on [P]laintiff's house [of which Plaintiff was not aware,]" (Compl. ¶ 33), and that Plaintiff should be permitted to file TILA suits against Defendants within the three-year rescission period.

Plaintiff, however, does not include a request for rescission in his prayer for relief. (See Compl. ¶¶ 29-30.) Instead, Plaintiff demands, among other things, compensatory and punitive damages (Id.) Such relief is governed by the applicable one-year statute of limitations and as such, Plaintiff cannot avail himself of the three year rescission period. TILA's statute of limitations provides that "[a]ny action under this section may be brought in any United States district court, or in any other court of competent jurisdiction, within one year from the date of the occurrence of the violation." 15 U.S.C. § 1640(e). This Court must determine when Plaintiff's cause of action under TILA accrued. Plaintiff alleges he signed his loan papers in the presence of an APEX official sometime in July of 2006 (Compl. ¶ 33.); thus, that is the date of the alleged

---

[5] See Jefferies, 543 F. Supp. 2d at 380 (citing 15 U.S.C. § 1635(f)) ("[W]hen a lender does not comply with TILA's notice and disclosure requirements, the borrower has a three-year right of rescission period.")

TILA violation and when the cause of action accrued. See Andrew v. Ivanhoe Fin., Inc., No. 07-729, 2008 U.S. Dist. LEXIS 42860, *13 (E.D. Pa. May 30, 2008) (citing Oshiver v. Levin, Fishbein Sedran & Berman, 38 F.3d 1380, 1385 (3d Cir. 1994)) ("A statute of limitations begins to run when the plaintiff's cause of action accrues."). Sixteen months later, Plaintiff's Complaint was filed on December 13, 2007. (Compl. ¶¶ 37-38.) More than one year has passed, according to the Plaintiff's Complaint, from the date of the TILA violation and the date of Plaintiff's Complaint. Thus, unless Plaintiff can show there is justification for equitable tolling, the statute of limitations bars Plaintiff's TILA claims as to Defendants. See Andrew, 2008 U.S. Dist. LEXIS 42860 at *13.

"The Third Circuit has held that TILA's statute of limitations is subject to equitable tolling in certain circumstances. Kemezis v. Matthew, No. 07-5086, 2008 U.S. Dist. LEXIS 47330, at *11 (E.D. Pa. June 16, 2008) (citing Ramadan v. Chase Manhattan Corp., 156 F.3d 499, 504-505 (3d Cir. 1998)). The court in Kemezis laid out three situations when equitable tolling may be employed in the interest of justice:

> Three scenarios exist when equitable tolling may be appropriate: (1) where the defendant has actively misled the plaintiff respecting the plaintiff's cause of action; (2) where the plaintiff in some extraordinary way has been prevented from asserting his or her rights; or (3) where the plaintiff has timely asserted his or her rights mistakenly in the wrong forum. [Oshiver, 38 F.3d at1387]. A party seeking tolling must also demonstrate that he or she "exercised reasonable diligence in investigating and bringing the claims." Miller v. N.J. Dep't of Corrections, 145 F.3d 616, 618-19 (3d Cir. 1998).

Kemezis, 2008 U.S. Dist. LEXIS 47330 at *11. In the instant case, Plaintiff's TILA claims may be eligible for equitable tolling under the first alternative listed if there has been fraudulent concealment on the part of the defendants. See Andrew, 2008 U.S. Dist. LEXIS 42860 at *14

10

(citing Smith v. EquiCredit Corp., No. 01-CV-4326, 2002 U.S. Dist. LEXIS 19395, at *4 (E.D.Pa. Oct. 4, 2002)); see also Wise v. Mortgage Lenders Network USA, Inc., 420 F. Supp. 2d 389, 395-96 (E.D. Pa. 2006) (citing Beauty Time v. VU Skin Sys., 118 F.3d 140, 144 (3d Cir. 1997) ("Plaintiffs' underlying complaint 'sounds inherently in fraud or deceit' which, pursuant to the Third Circuit's decision in Beauty Time, automatically tolls the statute of limitations until such time as the fraud has, or should have, been revealed.").

Although Plaintiff does allege "outright fraud and concealment of documents," Pl. Br. Supp. Opp., 51, "[a]llegations of fraudulent concealment tolling the statute of limitations must meet the requirements of Federal Rule of Civil Procedure 9(b)." Andrew, 2008 U.S. Dist. LEXIS 42860 at *14 (citation omitted).  In Lum v. Bank of Am., the Third Circuit expounded on the heightened pleading standard imposed on allegations of fraud:

> In order to satisfy Rule 9(b), plaintiffs must plead with particularity "the 'circumstances' of the alleged fraud in order to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior."  Seville Indus. Mach. Corp. v. Southmost Mach. Corp., 742 F.2d 786, 791 (3d Cir. 1984). Plaintiffs may satisfy this requirement by pleading the "date, place or time" of the fraud, or through "alternative means of injecting precision and some measure of substantiation into their allegations of fraud."  Id. (holding that a plaintiff satisfied Rule 9(b) by pleading which machines were the subject of alleged fraudulent transactions and the nature and subject of the alleged misrepresentations). Plaintiffs also must allege who made a misrepresentation to whom and the general content of the misrepresentation. See [Saporito v. Combustion Eng'g, 843 F.2d 666, 675 (3d Cir. 1988)]; Rolo v. City Investing Co. Liquidating Trust, 155 F.3d 644, 658-59 (3d Cir. 1998); Klein v. General Nutrition Cos., 186 F.3d 338, 345 (3d Cir. 1999).

Lum v. Bank of Am., 361 F.3d 217, 223-24 (3d Cir. 2004).

Construing Plaintiff's Complaint liberally, it appears Plaintiff has plead with sufficient particularity that APEX withheld information regarding the lis pendens placed on Plaintiff's

11

property by Swett, and that without this information Plaintiff proceeded to obtain his loan. (Compl. ¶¶ 32-35; 39-41.) However, "[a] party seeking tolling must also demonstrate that he or she "exercised reasonable diligence in investigating and bringing the claims." Kemezis, 2008 U.S. Dist. LEXIS 47330 at *11 (quoting Miller, 145 F.3d at 618-19); see also Andrew, 2008 U.S. Dist. LEXIS 42860 at * 15 (citing Wise v. Mortgage Lenders Network USA Inc., 420 F. Supp. 2d 389, 394-95 (E.D. Pa. 2006) ("[Plaintiffs] also alleged facts to support their claim that they used reasonable diligence in investigating the alleged fraud, but that defendant prevented plaintiffs from discovering the fraud and misconduct.")

   In the instant matter, Plaintiff's Complaint reveals that Plaintiff haphazardly signed his loan documents and failed to perform any due diligence.  For example, Plaintiff concedes that he signed his loan papers "without even looking at them." (Compl. ¶ 33.)  Moreover, Plaintiff was well aware of the lis pendens on his property as early as August 2006 when he "requested a meeting with the Monmouth County Prosecutor located in Freehold[,] NJ where he reported the unlawful Lis pendens as a financial crime and asked for an investigation." (Compl. ¶¶ 30; 45.) Obviously, Plaintiff would not have requested a criminal investigation be commenced had he not believed the failure to disclose the lis pendens rose to the level of criminal liability.  Any equitable tolling of the state would begin, at latest, at the point when the plaintiff is, or should have been, aware of the concealment. See Component Hardware Group v. Trine Rolled Moulding Corp., No. 05-891, 2007 U.S. Dist. LEXIS 54900, at *24 (D.N.J. July 27, 2007) ("New Jersey courts have held that 'active concealment tolls the statute of limitations until the plaintiff exercising reasonable diligence knows or should have known of the fraud.'") (citations and internal quotations omitted).  In this case, that is no later than August 2006 - more than fifteen

12

months before Plaintiff filed suit and thus, the TILA claims are barred by the statute's one-year statute of limitations. As such, it is unnecessary for this Court to reach the merits of Plaintiff's TILA claims against each defendant. Accordingly, Plaintiff's TILA claims are dismissed with prejudice.

**D. Plaintiff's RICO Claims**

Plaintiff alleges the defendants are in violation of RICO, 18 U.S.C. 1961 et. seq. (Compl. ¶¶ 140-51.) Specifically, Plaintiff argues the defendants formed an enterprise with the sole purpose to destroy Plaintiff emotionally and financially. In response, the defendants contend Plaintiff has failed to allege with specificity an enterprise separate and distinct from the individual participants and that Plaintiff's injury was not proximately caused by the actions alleged in the Complaint.

The RICO Act "provides for liability in civil suits brought by any person injured 'in his business or property' by a RICO violation, with a compulsory award of treble damages, costs, and attorneys fees. . . [and] makes it unlawful for 'any person' who is employed by or associated with 'any enterprise' affecting interstate commerce to 'participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity.'" Genty v. Resolution Trust Corp., 937 F.2d 899, 906 (3d Cir. 1991) (citations omitted). To properly plead a RICO violation, a plaintiff must satisfy the heightened pleading standard of Federal Rule of Civil Procedure 9(b). Warden v. McLelland, 288 F.3d 105, 114 (3d Cir. 2002). Specifically, Rule 9(b) states "a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). In Frederico v. Home Depot, 507 F.3d 188 (3d Cir. 2007), the Third Circuit qualified what information is required to be alleged to satisfy the heightened pleading standard provided for by Rule 9(b):

13

> Pursuant to Rule 9(b), a plaintiff alleging fraud must state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the "precise misconduct with which [it is] charged." Lum v. Bank of America, 361 F.3d 217, 223-224 (3d Cir. 2004). To satisfy this standard, the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation. See id. at 224.

Frederico, 507 F.3d at 200; see also Seville Industrial Machinery Corp. v. Southmost Machinery Corp., 742 F.2d 786, 791 (3d Cir. 1984). Further, "[a] RICO plaintiff must also 'allege who made a misrepresentation to whom and the general content of the misrepresentation.'" Zellner v. Monroe County Mun. Waste Mgmt. Auth., No. 3:07-CV-1976, 2008 U.S. Dist. LEXIS 57769, at *24-25 (M.D. Pa. July 28, 2008) (citation omitted). A RICO claim requires proof of four elements:

> (1) the existence of an enterprise affecting interstate commerce; (2) that Defendants were employed by or associated with the enterprise; (3) that the Defendants participated, directly or indirectly, in the conduct or affairs of the enterprise; and (4) that the Defendants participated through a pattern of racketeering activity that must include the allegation of at least two (2) racketeering acts.

Zellner, 2008 U.S. Dist. LEXIS 57769 at *19-20 (citation omitted).

To properly allege a RICO violation, a plaintiff must articulate a pattern of racketeering activity.[6] See Bonavitacola Elec. Contr., Inc. v. Boro Developers, Inc., 87 Fed. Appx 227, 231 (3d Cir. 2003) (citations omitted). The claim "must include the allegation of at least two (2) racketeering acts." Zellner, 2008 U.S. Dist. LEXIS 57769 at *20. In the instant case, for the

---

[6]"To set out a prima facie showing of a civil RICO violation under 18 U.S.C. § 1964(c), a plaintiff must have been injured by 'racketeering activity,' 18 U.S.C. § 1962(c)-(d). 'Racketeering activity' is defined as a violation of certain enumerated statutes - commonly known as 'predicate acts' - in 18 U.S.C. § 1961(1)." Breslin v. Brainard, 128 Fed. Appx. 237, 240 (3d Cir. 2005); see also Anderson v. Ayling, 396 F.3d 265, 269 (3d Cir. 2005) ("The term 'racketeering activity' is defined in 18 U.S.C. § 1961(1) to include a long list of state and federal crimes, among them the wire fraud alleged here."); see generally 18 U.S.C. §§ 1341, 1343.

14

purposes of racketeering activities, Plaintiff alleges predicate acts of mail and wire fraud,[7] "by telephone, letter, fax[,] and probably e-mail . . . to destroy [Plaintiff] financially . . . and to deprive him of his liberties and all property" (Compl. ¶ 142) and a pattern between Swett and Judge Guadagno and "with high probability [Financial Defendants]." (Compl. ¶143.) Plaintiffs' Complaint fails to allege any predicate acts of mail or wire fraud on the part of defendants Encore Credit, Option One, or Select Portfolio. As such, they are dismissed from Count VI. As to Swett and Land Options, Plaintiff alleges sparse –but potentially relevant– incidents of communications over mail and wire.

"Where acts of mail and wire fraud constitute the alleged predicate racketeering acts, those acts are subject to the heightened pleading requirement of Rule 9(b)." Warden, 288 F.3d at 105 (citing Rolo v. City Investing Co. Liquidating Trust, 155 F.3d 644, 657-58 (3d Cir.1998)). The court in Annulli v. Panikkar addressed the differential pleading nature of mail and wire fraud:

> There are two elements of a mail or wire fraud charge: "(a) a scheme to defraud, and (2) a mailing or wire in furtherance of that scheme." Greenberg v. Brewster, 816 F. Supp. 1039, 1049 (E.D. Pa. 1993). Wholly intrastate use of the mails for fraud violates the mail fraud statute. See, e.g., In re Burzynski, 989 F.2d 733, 742 (5th Cir. 1993). In contrast, the federal wire fraud statute requires interstate use of the wire. See, e.g., Smith v. Ayres, 845 F.2d 1360, 1366 (5th Cir. 1988) ("As

---

[7]Plaintiff attempts to allege many "predicate" acts. He provides a short, but by no means exhaustive, list of allegations in Count VI of his Complaint, including: extortion, fraud, embezzlement, theft, and "unbridled plundering." (Compl. ¶ 142.) General allegations, such as fraud and theft, will not satisfy the pleading standard as they are "not included as [specifically listed] racketeering activit[ies] pursuant to 18 U.S.C. § 1961(1)." Zellner, 2008 U.S. Dist. LEXIS 57769 at *23; see Id. ("[G]eneral allegations of fraud and theft will be dismissed as potential predicate acts."). Examples of predicate acts include "state felonies punishable by imprisonment of more than a year such as murder, kidnaping, gambling or extortion, as well as more than thirty federal crimes, such as drug offenses, obstruction of justice, obscenity, and mail, wire, bankruptcy, and securities fraud." Genty, 937 F.2d at 907.

15

several courts have recognized, the statute requires that the wire communication cross state lines.").

Annulli v. Panikkar, 200 F.3d 189, 200 n. 9 (3d Cir. 1999); see also Zellner, 2008 U.S. Dist. LEXIS 57769, 22-23 (citing Stanley v. Int'l Bhd. of Elec. Workers, AFL-CIO CLC, 207 Fed. Appx. 185, 189 (3d Cir. 2006)) (internal quotations omitted) ("[T]he wire fraud statute, 18 U.S.C. § 1343, 'criminalizes a scheme to defraud that is transmitted by wire 'in interstate or foreign commerce'; thus, a complaint must allege interstate use of the wire for each predicate act."). Moreover, when asserting mail fraud allegations, a plaintiff must "identify the purpose of the mailing within the defendant's fraudulent scheme and specify the fraudulent statement, the time, place, and speaker and content of the alleged misrepresentations." Annulli, 200 F.3d at 201 n. 10. In other words, the plaintiff's pleading must contain the "who, what, when and where details of the alleged fraud." Bonavitacola, 87 Fed. Appx. at 231 (quoting Allen Neurosurgical Assoc., Inc. v. Lehigh Valley Health Network, No. CIV-A-99-4653, 2001 WL 41143 (E.D. Pa. Jan. 18, 2001)).

Accordingly, this Court will only consider as predicate racketeering acts those wire frauds which have been alleged to have been transmitted by wire "in interstate or foreign commerce" and those mail frauds that are alleged to have made use of the United States Postal Service. See Zellner, 2008 U.S. Dist. LEXIS 57769 at *23 ("As these . . . frauds were not properly plead, the Court will not consider them as 'predicate acts.'"). Further, this Court will only consider as predicate racketeering acts those mail and wire frauds alleged with the specificity required by the heightened pleading standard of Rule 9(b).

First, Plaintiff alleges a total of eight communications in his Complaint not made by Plaintiff himself. Of these nine communications, four are too vague for this Court to discern if the communication occurred by mail or over wire. Specifically, the allegation of communication between Plaintiff and APEX (Compl. ¶ 32) fails to allege whether the communication took place over mail, wire, or in person. Similarly, the "specification" made to Plaintiff made by Land Options (Compl. ¶ 39) and the behind the scenes communications between Swett and Judge Guadagno (Compl. ¶¶ 75; 88) fail to allege how the communications occurred. As such, this Court cannot consider these communications as mail or wire fraud for the purposes of racketeering activity.

Second, of the remaining five alleged communications, one does not rise to the level of specificity required by the heightened pleading standard of Rule 9(b). It is impossible for this Court to discern the "date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation" of the second telephone communication between Judge Guadagno and Land Options. (Compl. ¶¶ 90-92); See Frederico, 507 F.3d at 200.

Third, to qualify as predicate acts, the four remaining communications must constitute either mail or wire fraud. There are two elements of a mail or wire fraud charge: "(a) a scheme to defraud, and (2) a mailing or wire in furtherance of that scheme." Greenberg, 816 F. Supp. at 1049. Communication by mail by Judge Guadagno in response to Plaintiff's letters (Compl. ¶ 78), communication by mail by Judge Guadagno updating Plaintiff on the status of Plaintiff's motions (Compl. ¶ 88), and communication by email by Land Options in response to Plaintiff's email request which only directed the Plaintiff to send his request to the court (Compl. ¶ 100) are clearly not "in furtherance of [the scheme to defraud]." See Greenberg, 816 F. Supp. at 1049.

17

This leaves only the telephone communication alleged by Plaintiff to have occurred between Judge Guadagno and Land Options during a short adjournment of a hearing. (Compl. ¶ 67.) Even if the facts alleged in this portion of the Complaint are sufficient to allow the Court to "otherwise inject precision or some measure of substantiation into a fraud allegation," it is unnecessary for the Court to continue its analysis as to whether this communication constitutes wire fraud. "A 'pattern of racketeering activity means' at least two predicate acts that 'are related and that amount to or pose a threat of continued criminal activity.'" Bonavitacola, 87 Fed. Appx at 231 (quoting H. J., Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229, 239 (1989)).  There are not two predicate acts alleged.

Upon a liberal construction of Plaintiff's voluminous Complaint, this Court can discern only one communication that arguably rises to the level of specificity to satisfy 9(b)'s heightened pleading requirement: a phone call between Judge Guadagno and Land Options. (Compl. ¶ 67.) Thus, Plaintiff has failed to plead two predicate acts of mail or wire fraud sufficient to constitute a pattern of racketeering activity. Accordingly, Plaintiff's RICO claims in Count VI of the Complaint are dismissed.

**E. Plaintiff's State Claims**

Jurisdiction over Plaintiff's state law claims is governed by 28 U.S.C.A. § 1367(c), which states in relevant part, "[t]he district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, [or] the district court has dismissed all claims over which it has original jurisdiction[.]" 28 U.S.C.A. § 1367(c). Absent some compelling circumstances, it is generally proper for the district court to decline to exercise supplemental

jurisdiction. See Shaffer v. Board of School Directors of Albert Gallatin Area School, 730 F.2d 910, 912 (3d Cir. 1984) (holding that "pendent jurisdiction [over state law claims] should be declined where the federal claims are no longer viable") (citation omitted); see also Hedges v. Musco, 204 F.3d 109, 123 (3d Cir. 2000) (recognizing that if the district court has dismissed all claims over which it has original jurisdiction, the court must decline to decide pendent state claims unless "considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so") (citation and quotations omitted).

Furthermore, district courts should not decide issues of state law "both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law." United Mine Workers Of America v. Gibbs, 383 U.S. 715, 726 (1966). Courts in this circuit have consistently declined to exercise supplemental jurisdiction over state claims when all federal claims have been dismissed. See, e.g., V-Tech Services, Inc. v. Street, 215 Fed. Appx. 93, 96 (3d Cir. 2007) (affirming the district court's refusal to exercise supplemental jurisdiction over fraud, promissory estoppel, breach of contract, and unjust enrichment claims after dismissal of RICO claims); Wall v. Dauphin County, 167 Fed. Appx. 309, 313 (3d Cir. 2006) (approving dismissal of state claims for lack of jurisdiction after dismissal of plaintiff's § 1983 and § 1985 claims); Mosca v. Cole, 384 F.Supp. 2d 757, 770 (D.N.J. 2005) (remanding remaining state LAD and other claims back to state court after plaintiff's federal claims were dismissed by the district court).

Because Plaintiff's federal claims are dismissed, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims, and thus will not consider Defendants' motions to dismiss such claims.

**III. Conclusion**

For the foregoing reasons, Plaintiff's federal claims are dismissed with prejudice. Furthermore, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims.