# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____
                                          :
VASSOS MARANGOS, <u>pro</u> <u>se</u>,           :
                                          :        Civil Action No. 3:07-cv-5937-FLW
                    Plaintiff,            :
                                          :             **Opinion**
        v.                                :
                                          :
CECILY CATHERINE SWETT                    :
<u>et</u> <u>al</u>.,                              :
                                          :
                                          :
                    Defendants.           :
_____:


**<u>WOLFSON</u>, <u>United States District Judge</u>:**

Presently before the Court is a motion filed by Defendant New Jersey Superior Court Judge Michael A Guadagno ("Judge Guadagno" or "Defendant"), to dismiss all claims of Plaintiff Vassos Marangos, <u>pro</u> <u>se</u>, pursuant to <u>Fed. R. Civ. P.</u> 12(b)6. Plaintiff alleges, pursuant to 42 U.S.C. §1983, that Defendant violated his First, Fourth, Fifth, Sixth and Fourteenth Amendment Rights by denying Plaintiff's numerous  motions arising from his matrimonial proceeding filed in the New Jersey Superior Court, Monmouth County. In addition, Plaintiff alleges violation of 18 U.S.C. § 1962(c),  Plaintiff contending that Judge Guadagno, along with others, conspired to ruin him financially through a fraudulent scheme arising from Plaintiff's refinancing of his home.   Finally, Plaintiff asserts several state law claims against Judge Guadagno, including negligent and intentional infliction of emotional distress.[1]  For the reasons

--------

[1] Plaintiff also alleges in Counts Three and Five of his Complaint that Defendant wrongfully used his official position and maliciously abused process. (Compl. ¶¶ 128-32; 138-39).  These counts, however, do not resemble any viable cause of action recognized by law.

1

that follow, the Court grants Judge Guadagno's motion to dismiss Plaintiff's federal and state claims with prejudice.

## I. Background and Procedural History

Since Judge Guadagno moves to dismiss Plaintiff's claims pursuant to Fed. R. Civ. P. 12(b)(6), the following version of events assumes Plaintiff's allegations to be true.

Plaintiff Vassos Marangos' ("Marangos") and Cecily Catherine Swett's[2] ("Swett") second judgment for divorce was entered before the Honorable Alexander Lehrer ("Judge Lehrer") in the Superior Court of New Jersey, Monmouth County on January 17, 2006.  (Compl. ¶ 16.)   After Judge Lehrer removed himself from the matter,[3] Judge Guadagno was assigned to Plaintiff's matrimonial case.  (Id. ¶ 29.)  Although Plaintiff was represented by counsel in his matrimonial case, Plaintiff is proceeding in the present matter as a pro se litigant.[4]

Defendant filed a court order on June 7, 2006, revising Plaintiff's child visitation schedule from an alternate month schedule to an alternate weekend schedule and granted oral argument to Swett.  (Id. ¶¶ 30, 46.)  Plaintiff filed two motions "in the fall of 2006," one of

_____

Therefore, this Court subsumes those factual allegations into the remaining counts of the Complaint.

[2]Swett is also a defendant in this matter and has filed a motion to dismiss Plaintiff's Complaint for failure to state a claim pursuant to 12(b)(6).  That motion will be decided separately by this Court.

[3]Judge Lehrer recused himself from this proceeding sometime after March 31, 2006. (Compl. ¶¶ 28-29.)  Not surprisingly, given Plaintiff's general blunderbuss claims, he alleges that the recusal was the product of judicial misconduct. Id.

[4]The Court is obligated to construe pro se pleadings liberally.  Haines v. Kerner, 404 U.S. 519, 520 (1972); Dluhos v. Strasberg, 321 F.3d 365, 369 (3d Cir. 2004) ("[The Court will] apply the applicable law, irrespective of whether the pro se litigant has mentioned it by name.").

which was to increase the visitation schedule of this order due to Plaintiff's changed circumstances.  (Id. ¶¶ 46-47.)  Plaintiff alleges that Judge Guadagno was compelled by Judge Lehrer "and/or others" to retaliate against Plaintiff because his motions exposed corruption in Freehold, New Jersey.  (Compl. ¶ 47.)  Judge Guadagno repeatedly denied oral argument on this motion, and filed an order without oral argument on October 31, 2006, denying Plaintiff's Motion for Change of Circumstances for Lack of Jurisdiction. (Compl. ¶ 47.)  In turn, Plaintiff filed a Motion for Reconsideration of the October 31, 2006 Order.  (Compl. ¶ 48.)

Plaintiff's motions were delayed and rescheduled by Judge Guadagno three times.  (Compl. ¶ 49.)  On January 11, 2007, Plaintiff learned from Judge Guadagno's law clerk that Judge Guadagno would be denying Plaintiff's Motion for Oral Argument.  (Compl. ¶ 50.)  Plaintiff then wrote a letter to Judge Guadagno asking him not to file an order and to allow him enough time to file a Motion to Recuse the Judge.  (Compl. ¶ 50.)  In this letter, Plaintiff wrote, "the situation has reached such catastrophic levels with the loss of his children and the financial situation that the involvement of the prosecutor was unavoidable."  (Compl. ¶ 50.)  Judge Guadagno interpreted Plaintiff's letter as a threat and referred the matter to the State Police.   On January 11, 2007, two law enforcement officers visited Plaintiff at his place of employment regarding the letter.  (Compl. ¶¶ 51-53.)  On January 11, 2007, Judge Guadagno filed an order denying both of Plaintiff's motions without oral argument and threatened Plaintiff with sanctions if he filed another motion. Plaintiff alleges the denial was nothing more than "a well-planned, premeditated and a deliberate act to prevent [P]laintiff from presenting facts in person that would have compelled the Court to apply the law."  (Compl. ¶¶ 54-55.)  By denying Plaintiff's motions, Plaintiff alleges that Judge Guadagno "[deprived Plaintiff] of even a hearing regarding his

3

parental rights, knowing Plaintiff was on the brink of financial collapse, and then contacting the State [P]olice and ruining [P]laintiff's profession constitutes also <u>child abuse and endangering the welfare of minors</u>."  (Compl. ¶ 58) (emphasis in original).

On March 14, 2007, Monmouth County Probation, the child support agency, commenced a hearing for the child support arrears arising from Plaintiff's divorce proceedings.  (Compl. ¶ 61.)  Due to the complexity of the issues, this hearing was terminated by the Child Support Hearing Officer, at Plaintiff's request, to have the matter heard by a Family Court Judge, that being Judge Guadagno.  (Compl. ¶ 65.)  At this hearing, Judge Guadagno addressed Swett's application for Plaintiff's arrest without informing Plaintiff of his right to appointed counsel and also "remind[ed Plaintiff] there were consequences of filing an appeal." (Compl. ¶¶ 65-66.)  In addition, Judge Guadagno asked for Land Option's phone number in order to instruct Land Option to distribute to Swett a portion of Plaintiff's funds held in escrow.  (Compl. ¶ 67.)  On March 12, 2007, Judge Guadagno ordered the remainder of the funds held by Land Options to be held in escrow for later resolution.  This order also directed Plaintiff to comply with Judge Lehrer's March 31, 2006 order to send Swett Fidelty IRA statements within 48 hours.  (Compl. ¶¶ 68, 71.)  Plaintiff complied with this order on March 15, 2007.  (Compl. ¶ 72.)

On March 26, 2007,[5] Judge Guadagno sent a letter to Plaintiff indicating that it had come to the court's attention that Plaintiff was not complying with the March 14, 2007 order. (Compl.¶ 75.) Plaintiff alleges that Judge Guadagno could have only obtained that information by communicating <u>ex parte</u> with Swett.  (Compl. ¶ 75.)  On March 30, 2007, Plaintiff sent a letter to

---

[5] The Complaint alleges the date of this letter to be March 26, 2006, but it appears from surrounding factual assertions that the date of the year is a typographical error, and the letter was in fact sent on March 26, 2007.

Judge Guadagno informing him that companies, such as Fidelity IRA, only issue quarterly statements.  (Compl. ¶ 77.)  On April 19, 2007, Judge Guadagno sent a letter to Plaintiff informing him that a representative from Fidelty had informed the Court that monthly statements could be issued upon request.  (Compl. ¶ 78.)  In this letter, Judge Guadagno also gave permission to Swett to subpoena Fidelity IRA to acquire monthly statements from the start of the divorce action in February 2004 to the statement of March 2007.  (Compl. ¶ 80.)

Plaintiff then filed the post-judgment motion required by the previous judgment of divorce to resolve all outstanding issues and enforce all clauses in the divorce judgment.  (Compl. ¶ 83.)  This motion was scheduled for June 15, 2007.  (Compl. ¶ 83.)  Swett communicated to Judge Guadagno that she did not receive the motion material, but Plaintiff alleges Swett did not communicate this to Plaintiff.  (Compl. ¶ 88.)  In a June 12, 2007 letter, Judge Guadagno informed Plaintiff that the motion would be dismissed if he did not provide proof that the motion material was sent to Swett.  (Compl. ¶ 88.)  Plaintiff provided evidence of three different delivery methods and the motion was rescheduled for July 13, 2007.  (Compl. ¶ 89.)  At the July 13, 2007 hearing, "Judge Guadagno agreed. . .that $35,000.00 could be deducted from the Fidelty IRA account for the children's school tuition paid by [P]laintiff for three consecutive years."  (Compl. ¶ 90.)  On July 16, 2007, Judge Guadagno filed an order that both parties submit further proofs, specifically cancelled checks, to substantiate that the bills for school, medical, and other expenses of the children, submitted with the previous motion, were indeed paid and to submit any other contested issues.  (Compl. ¶ 91.)

Judge Guadagno allegedly called Land Options again to get the precise amount of the money being held in escrow.  (Compl. ¶ 92.)  Judge Guadagno used these numbers to file an

order on August 24, 2007 giving Swett $40,148.08 and the remainder of the funds to Plaintiff. (Compl. ¶ 92.)  Plaintiff alleges that Judge Guadagno could not have gotten the amounts contained in this order unless he acted improperly by "manipulat[ing] the numbers even interpreting non-existent money, disregarding most clauses in the judgment of divorce[,] including medical expenses and child care expenses, disregarding the evidence (the cancelled checks) and ignoring the evidence provided that Swett already stole more than $61,000 from secret bank accounts Swett withheld from the judgment." (Compl. ¶ 93.)

On December 13, 2007, Plaintiff filed this Complaint in the United States District Court for the District of New Jersey seeking "declaratory and injunctive relief determining Judge Guadagno to be unfit to serve in the judiciary and enjoining him from serving as a Judge,"[6] $20,000,000.00 in compensatory damages, $100,000,000 in punitive damages, treble damages, interest and costs of suit, counsel fees, and any other relief the Court may deem proper.[7]  Judge Guadagno filed this Motion to Dismiss for Failure to State a Claim, pursuant to Fed. R. Civ. P. 12(b)(6), on March 27, 2008.  Plaintiff filed a cross-motion for the appointment of a special prosecutor on April 7, 2007, which Plaintiff withdrew with this Court's approval on September 16, 2008.

---

[6]At the outset, it must be noted that these claims for injunctive relief regarding Judge Guadagno's status as a judge do not lie within the jurisdiction of the Court. N.J.S.A. CONST. ART. VI, § VI, par. 4 ("The judges of the superior court shall also be subject to removal from office by the Supreme Court for such causes and in such manner as shall be provided by law.");N.J.S.A. 2B:2A-2 (mandating the removal of judges "for misconduct in office, willful neglect of duty, or other conduct evidencing unfitness for judicial office, or for incompetence."); see also State v. Clark, 191 N.J. 503, 507 (2007) ("Our Constitution authorizes this Court to remove judges from office 'for such causes and in such manner as shall be provided by law.").

[7]This Court notes that Plaintiff filed a notice of appeal with the New Jersey Superior Court, Appellate Division from Judge Guadagno's Order issued on December 19, 2007.  That appeal remains pending.

**II. Discussion**

    **A. Standard of Review**

    When reviewing a motion to dismiss on the pleadings, courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (citation and quotations omitted). Recently, in Bell Atlantic Corporation v. Twombly, 127 S.Ct. 1955 (2007), the Supreme Court clarified the 12(b)(6) standard. Specifically, the Court "retired" the language contained in Conley v. Gibson, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Id. at 1968 (quoting Conley, 355 U.S. at 45-46). Instead, the factual allegations set forth in a complaint "must be enough to raise a right to relief above the speculative level." Id. at 1965. As the Third Circuit has stated, "[t]he Supreme Court's Twombly formulation of the pleading standard can be summed up thus: 'stating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element. This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." Phillips, 515 F.3d at 234 (quoting Twombly, 127 S.Ct. at 1965).

    **B. Judicial Immunity**

    The Court first notes that Plaintiff's complaint is a voluminous, meandering, and often venomous attack on the defendants in what appears to be an attempt to re-litigate a divorce case

not decided in his outright favor, a product of some unsubstantiated conspiracy between wholly unrelated actors whose sole purpose was allegedly to destroy Plaintiff financially and emotionally.[8]  Plaintiff alleges numerous violations of 42 U.S.C. § 1983 by Judge Guadagno in his complaint,[9] including: (1) violation of Plaintiff's First Amendment right to access to the courts (Compl. ¶ 110); (2) violation of Plaintiff's Fifth and Fourteenth Amendment rights by engaging in ex parte communications and making certain judicial determinations (Compl. ¶ 111); (3) violation of Plaintiff's First, Fourth, Fifth, and Fourteenth Amendment rights by committing felony child abuse in his official capacity (Compl. ¶ 112); (4) violation of Plaintiff's Fourteenth Amendment rights by allowing Plaintiff's property "to be usurped and stolen" (Compl. ¶ 113); and (5) violation of Plaintiff's Sixth and Fourteenth Amendment rights by not allowing him the right to appointed counsel (Compl. ¶ 114).

Judge Guadagno contends that all the above claims fall within the ken of absolute judicial immunity.  See Figueroa v. Blackburn, 39 F. Supp. 2d 479, 484 (D.N.J. 1999), aff'd, 208 F.3d 435 (3d Cir. 2000) ("It is a well-established principle of Angelo-American jurisprudence that judges are generally afforded absolute immunity from civil suits for money damages") (citations omitted).  The protection of judicial immunity, though ostensibly for the protection of judges, is in fact "for the benefit of the public, whose interest it is that the judges should be at liberty to

---

[8]For example, Plaintiff proclaims, "[i]t is abundantly clear to this Plaintiff that in New Jersey Family Courts women are not required to prove anything." (Compl. ¶ 73.) Moreover, "[in]n New Jersey, Plaintiff has observed that a woman can lie in court with no repercussions, but a man can be jailed for it." (Compl.¶ 103.)  In sum, Plaintiff contends he was the innocent victim of a villainous scheme infused with gender discrimination and wrought with judicial corruption.

[9] It is unclear whether Plaintiff is suing Judge Guadagno in his individual or official capacity.

exercise their functions with independence and without fear of consequences." Pierson v. Ray, 386 U.S. 547, 554 (1967) (internal quotation marks omitted).  "If judges were personally liable for erroneous decisions, the resulting avalanche of suits, most of them frivolous but vexatious, would provide powerful incentives for judges to avoid rendering decisions likely to provoke such suits." Forrester v. White, 484 U.S. 219, 226-27 (1988).

Courts have repeatedly emphasized the extensive scope of judicial immunity, holding that immunity applies "'however injurious in its consequences [the judge's action] may have proved to the plaintiff'." Gallas v. Supreme Court, 211 F.3d 760, 769 (3d Cir. 2000) (quoting Cleavinger v. Saxner, 474 U.S. 193, 199-200)).  "Disagreement with the action taken by the judge . . . does not justify depriving that judge of his immunity. . . . The fact that the issue before the judge is a controversial one is all the more reason that he should be able to act without fear of suit." Stump, 435 U.S. at 363-64.  Further, highlighting its expansive breadth, the court explained  "the public policy favoring the judicial immunity doctrine outweighs any consideration given to the fact that a judge's errors caused the deprivation of an individual's basic due process rights."  Figueroa, 39 F. Supp. 2d at 495.

The doctrine, albeit expansive, is not without its limits.  In Figueroa, the court outlined judicial immunity and its two exceptions as:

> Though the sweep of judicial immunity is broad, Barnes v. Winchell, 105 F.3d 1111, 1115 (6th Cir. 1997) (citations omitted), there are two sets of circumstances which circumscribe the doctrine. First, a judge is not afforded judicial immunity from civil liability for any nonjudicial acts, i.e., actions taken when the judge was not operating in her judicial capacity.  [Mireles v. Waco, 502 U.S. 9, 11 (1991); Forrester v. White, 484 U.S. 219, 227-29 (1988); Stump v. Sparkman, 435 U.S. 349, 360 (1978).]  Second, even if the act is judicial in nature, a judge is not immune for any actions taken in the "complete absence of all jurisdiction." Mireles, 502 U.S. at 12; Stump, 435 U.S. at 357. Thus, if [a judge's] actions were

9

> judicial actions not taken in the complete absence of all jurisdiction, she must be
> afforded protection from [a plaintiff's] civil suit.

Figueroa, 39 F. Supp. 2d at 485-86.  To summarize the very narrow exception to the judicial

immunity doctrine:

> [O]ur cases make clear that [judicial] immunity is overcome in only two sets of
> circumstances. First, a judge is not immune from liability for nonjudicial actions,
> i. e., actions not taken in the judge's judicial capacity. Forrester, 484 U.S. at 227-
> 229; Stump v. Sparkman, 435 U.S. at 360. Second, a judge is not immune for
> actions, though judicial in nature, taken in the complete absence of all jurisdiction.
> Id. at 356-357; Bradley v. Fisher, 13 Wall. at 351.

Mireles, 502 U.S. at 10-12.  Judge Guadagno contends that his actions were judicial in nature, as

well as within his jurisdiction, and thus protected by judicial immunity.  See Id.

### i.   A Judicial Act

The Supreme Court has established a "two-prong test to determine whether an act is

'judicial,' and therefore subject to immunity." Cavanagh v. Fayette County, No. 05-1182, 2006 U.S.

Dist. LEXIS 10483, at *5 (W.D. Pa. Feb. 27, 2006) (citing Stump, 435 U.S. at 362).  The Cavanagh

court explained:

> First, the court must consider whether the act in question is a function that is
> "normally performed by a judge."   [Stump, 435 U.S. at 362.] Under this
> "functionality" inquiry, a court is required to examine the nature and function of the
> act, rather than the act itself.  Mireles, 502 U.S. at 13. Even if a particular act is not
> a function normally performed by a judge, the court must look to the particular act's
> relation to a general function normally performed by a judge.  Id. Second, in
> determining whether an act is "judicial," the court must assess the parties'
> expectations, and whether they dealt with the judge in his or her judicial capacity.
> Stump, 435 U.S. at 362.  "Paradigmatic judicial acts" are those that involve
> "resolving disputes between parties who have invoked the jurisdiction of a court."
> Forrester v. White, 484 U.S. 219, 227, 98 L. Ed. 2d 555, 108 S. Ct. 538 (1988).

Cavanagh, 2006 U.S. Dist. LEXIS 10483 at *5-6; see also Mireles, 502 U.S. at 13 ("[T]he relevant

inquiry is the 'nature' and 'function' of the act, not the 'act itself.' In other words, we look to the

particular act's relation to a general function normally performed by a judge."); Trueman v. City of

Upper Chichester, No. 04-5085, 2005 U.S. Dist. LEXIS 23672, at *3 (E.D. Pa. Oct. 12, 2005), aff'd,

No. 07-2762, 2008 U.S. App. LEXIS 17767 (3d Cir. July 23, 2008).

ii.   **The Complete Absence of Jurisdiction**

Actions taken by a judge, judicial or otherwise, will not fall within the scope of judicial

immunity if they are taken in the "complete absence of all jurisdiction." Mireles, 502 U.S. at 12.

Jurisdiction, however, "is to be interpreted broadly." Cavanagh, 2006 U.S. Dist. LEXIS 10483 at

*9 (citing Stump, 435 U.S. at 357). "[A]cts that are merely 'in excess of jurisdiction' are covered

by absolute immunity." Cavanagh, 2006 U.S. Dist. LEXIS 10483 at *9 (citing Barnes v.

Winchell, 105 F.3d 1111, 1116 (6th Cir. 1997)). The Cavanagh court elaborated:

> "[A] judge acts in excess of jurisdiction if the act complained of is within his general
> power of jurisdiction but is not authorized because of certain circumstances,"
> whereas there "is a clear absence of jurisdiction when a court of limited jurisdiction
> attempts to adjudicate a case outside of its jurisdiction. . . ." Duty v. City of
> Springdale, 42 F.3d 460, 462 (8th Cir. 1994) (quotations omitted). The commission
> of grave procedural errors does not convert legitimate judicial action into action
> taken in the clear absence of jurisdiction. Stump, 435 U.S. at 359. The "erroneous
> manner in which [the court's] jurisdiction was exercised, however it may have
> affected the validity of the act," likewise does not render immunity inapplicable. Id.
>
> The "absence of jurisdiction" inquiry focuses on jurisdiction over subject matter,
> rather than over the person or geography: "'where a court has some subject matter
> jurisdiction, there is sufficient jurisdiction for immunity purposes.'" Figueroa v.
> Blackburn, 208 F.3d 435, 444 (3d Cir. 2000) (citing Winchell, 105 F.3d at 1122).
> As a result, "when . . . a court with subject matter jurisdiction acts where . . . personal
> jurisdiction is lacking, judicial…absolute immunity remain[s] intact." Stern v.
> Mascio, 262 F.3d 600, 607 (6th Cir. 2001). The operative inquiry is "whether at the
> time [the judge] took the challenged action he had jurisdiction over the subject matter
> before him." Stump, 435 U.S. at 356.

Cavanagh, 2006 U.S. Dist. LEXIS 10483 at *9-11.  Moreover, "[a] judge will not be deprived of

immunity because the action he took was in error, was done maliciously, or was in excess of his

11

authority, [nor] if his exercise of authority is flawed by the commission of grave procedural errors."
Stump, 435 U.S. at 356.

### C. Violation of Plaintiff's First Amendment Right to Access to the Courts

Plaintiff asserts that Judge Guadagno violated his First Amendment right "to access the courts for redress of grievances, to defend himself as a pro se litigant and to respond to applications filed by the adversary." (Compl. ¶ 110.)  Although the Complaint does not say how, presumably Plaintiff alleges that Judge Guadagno did this by, denying Plaintiff's motions, namely, disallowing oral argument, as Plaintiff alleges Judge Guadagno did on October 31, 2006 (Compl. ¶ 47) and January 11, 2007 (Compl. ¶ 54), and filing orders against Plaintiff, as Plaintiff alleges Judge Guadagno did on March 14, 2007 (Compl. ¶ 68) and July 16, 2007 (Compl. ¶ 91.)  The Supreme Court in Stump has explained:

> The relevant cases demonstrate that the factors determining whether an act by a judge is a "judicial" one relate to the nature of the act itself, i.e., whether it is a function normally performed by a judge, and to the expectations of the parties, i.e., whether they dealt with the judge in his judicial capacity.

Stump, 435 U.S. at 362.

"Denying motions" and "filing orders" are quintessential judicial acts within Judge Guadagno's jurisdiction to perform.  See Catanzaro v. Cottone, 228 Fed. Appx. 164, 166-67 (3d Cir. 2007) (determining judge was within his jurisdiction to perform act when he denied a plaintiff's motion to recuse and made determinations with respect to the sale of a marital home in a divorce proceeding pursuant to Pennsylvania law.); see also Stump, 435 U.S. at 356 ("A judge will not be deprived of immunity because the action he took was in error, was done maliciously,

or was in excess of his authority, [nor] if his exercise of authority is flawed by the commission of grave procedural errors").

In the instant matter, Plaintiff asks this Court to pierce judicial immunity to remedy unfavorable rulings and orders rendered by Judge Guadagno. Here, Judge Guadagno did nothing more than the activities normally associated with a family court judge, namely, issuing orders and denying motions made by parties to a divorce proceeding. Even taking all of Plaintiff's allegations in his Complaint as true, none of Judge Guadagno's actions with respect to this allegation fall outside Judge Guadagno's jurisdiction to perform and constitute judicial acts. Accordingly, Judge Guadagno's actions with regard to this allegation qualify for judicial immunity.

### D. Violation of Plaintiff's Fifth and Fourteenth Amendment Rights by Engagement in Ex Parte Communications and Judicial Determinations

Plaintiff asserts Judge Guadagno violated  his Fifth and Fourteenth Amendment rights "when . . . Judge Guadagno involved himself in unlawful ex parte hearings with [Swett], . . . unlawfully delaying hearings, willfully refusing to conduct hearings, willfully refused to allow or consider evidence presented, [and] willfully allowed . . . Swett to waste judicial time and resources [by relitigating issues barred by collateral estoppel and res judicata]."  (Compl. ¶ 111.) Plaintiff alleges that Judge Guadagno called Land Options to obtain financial information (Compl. ¶¶ 67-70; 92-93) and communicated ex parte with Swett (Compl. ¶¶ 75; 88).

In Dunsmore v. Chester County Children & Youth Services, No. 92-3746, 1993 U.S. Dist. LEXIS 1000, at *4 (E.D. Pa. Jan. 29, 1993), the court opined on judicial ex parte communication, finding:

> That a judge does not ordinarily engage in ex parte communications with counsel -
> to the alleged detriment of opposing counsel - <u>does not mean that such conduct is
> nonjudicial</u>. . . . Courts are known to act <u>ex parte</u>. <u>Stump v. Sparkman</u>, 435 U.S. 349,
> 363 n.12, 98 S. Ct. 1099, 1108 n.12., 55 L. Ed. 2d 331 (1978). Furthermore, judicial
> immunity is not overcome by allegations of bias, bad faith, or malice. <u>See Mireles</u>,
> 112 S. Ct. at 288; <u>Humphrey v. Court of Common Pleas</u>, 640 F. Supp. 1239, 1242
> (M.D. Pa. 1986).

<u>Dunsmore v. Chester County Children & Youth Services</u>, No. 92-3746, 1993 U.S. Dist. LEXIS 1000, at *4 (E.D. Pa. Jan. 29, 1993) (emphasis added).  Thus, even if these <u>ex parte</u> communications occurred as the result of "bias, bad faith, or malice," these <u>judicial</u> actions remain well within the scope of judicial immunity.  <u>See Id.</u> at *3 ("[E]ach action alleged in the . . . complaint to have been taken by her related to an adjudicative proceeding. Each, therefore, was taken in her judicial capacity and within the scope of her jurisdiction").

Further, the manner in which a court conducts its scheduling, how it decides to conduct hearings and consider evidence is within its discretion, and how judicial resources are to be spent are inherently judicial functions.  <u>See Figueroa</u>, 39 F. Supp 2d at 492 ("plaintiff's argument had no validity because a court has the inherent authority over its docket and persons before it <u>even</u> where [the] court ultimately lacks jurisdiction to decide the merits of the case") (citing <u>Panayotides</u>, 35 F. Supp. 2d at 415) (emphasis added).  In <u>Figueroa</u>, the Third Circuit determined that a judge's "failure" to grant a plaintiff an order required by law was not "an act taken in the absence of jurisdiction." <u>Figueroa</u>, 208 F.3d at 444.  The circuit court went on to examine the plaintiff's argument presented in detail:

> Taken to its logical extreme, the argument is that whenever a judge makes an error
> of law or procedure in a matter properly before him or her, that judge is not entitled
> to judicial immunity or, stated somewhat differently, a judge does not have
> jurisdiction to make a mistake. That, of course, is preposterous.

14

Id. at 444-45.  Moreover, whether or not Swett should have been allowed to raise issues that Plaintiff contends were barred by collateral estoppel and res judicata does not compromise Judge Guadagno's judicial immunity.  See Gallas, 211 F.3d at 769 ("Immunity will not be forfeited because a judge has committed 'grave procedural errors'") (citing Stump, 435 U.S. at 359).

In sum, the analysis of whether an act qualifies for judicial immunity "must focus on the general nature of the challenged action, without inquiry into such 'specifics' as the judge's motive or the correctness of his or her decision." Gallas, 211 F.3d at 769 (3d Cir. 2000); see also Mireles, 502 U.S. at 13 ("The relevant inquiry is the 'nature' and 'function' of the act, not the 'act itself.' In other words, we look to the particular act's relation to a general function normally performed by a judge.") (citation omitted).  The Supreme Court has made clear that "[i]mmunity will not be forfeited because a judge has committed 'grave procedural errors,' Stump, 435 U.S. at 359, or because a judge has conducted a proceeding in an 'informal and ex parte' manner. Forrester, 484 U.S. at 227, 108 S. Ct. at 544." Gallas, 211 F.3d at 769.

In the instant matter, Plaintiff alleges that Judge Guadagno engaged in ex parte communications with Swett and Land Options, refused to hold hearings, and declined to consider evidence presented by Plaintiff.  None of these actions, even if done with pure malice, fall outside the province of Judge Guadagno's jurisdiction. Furthermore, even assuming Judge Guadagno wholly disregarded settled judicial principles and New Jersey law when conducting the aforementioned acts, the well-settled doctrine of judicial immunity would still shield Judge Guadagno from liability. Accordingly, Judge Guadagno's actions alleged in this count of the Complaint were judicial in nature, and thus protected by judicial immunity.

**E. Violation of Plaintiff's First, Fourth, Fifth, and Fourteenth Amendment Rights by Felony Child Abuse in an Official Capacity**

Plaintiff asserts his First, Fourth, Fifth, and Fourteenth Amendment rights were violated by Judge Guadagno when "in his official capacity, Judge Guadagno committed felony official misconduct, felony interference with custody, and felony child abuse by allowing . . . Swett to violate Plaintiff's parental rights."  (Compl. ¶ 112.)  Plaintiff alleges that Judge Guadagno did this by (1) "[depriving Plaintiff] of even a hearing regarding his parental rights, knowing Plaintiff was on the brink of financial collapse," and (2) "then contacting the State [P]olice and ruining [P]laintiff's profession constitutes also <u>child abuse and endangering the welfare of minors</u>."  (Compl. ¶ 58.) (emphasis in original).

Plaintiff effectively concedes that the allegations of ¶ 112 of the Complaint were taken within Judge Guadagno's "official capacity."  (Compl. ¶ 112); <u>cf.</u> <u>Figueroa</u>, 39 F. Supp 2d at 485 ("Though the sweep of judicial immunity is broad, . . . there are two sets of circumstances which circumscribe the doctrine. First, a judge is not afforded judicial immunity from civil liability for any nonjudicial acts, i.e., actions taken when the judge was not operating in her judicial capacity") (citations omitted).  Even assuming Judge Guadagno acted with impure motives, as Plaintiff alleges in his Complaint, "[a] judge is absolutely immune from liability for his judicial acts even if his exercise of authority is flawed by the commission of grave procedural errors." <u>Stump</u>, 435 U.S. at 360. Further, any actions Judge Guadagno took regarding contacting the state police about the letter he received from Plaintiff that he perceived to be threatening do not involve Plaintiff's parental rights. [10]

---

[10] Even if the sentence, "the situation has reached such catastrophic levels with the loss of his children and the financial situation that the involvement of the prosecutor was unavoidable," (Compl. ¶ 50) in Plaintiff's letter may be perceived by some as non-threatening, Judge Guadagno's decision to consider it threatening and to refer it as such to the

16

Judicial immunity applies "'however injurious in its consequences [the judge's action] may have proved to the plaintiff'." <u>Gallas</u>, 211 F.3d at 769 (quoting <u>Cleavinger v. Saxner</u>, 474 U.S. 193, 199-200). The consequences felt by Plaintiff from Judge Guadagno's actions, however injurious they are alleged to have been, flow from judicial decisions Judge Guadagno made within his judicial capacity. Accordingly, those actions fall within the scope of judicial immunity.

### F. Violation of Plaintiff's Fourteenth Amendment Rights by Allowing Plaintiff's Property to be Usurped and Stolen

Plaintiff asserts his Fourteenth Amendment rights have been violated by Judge Guadagno when "in his official capacity, Judge Guadagno allowed Plaintiff's Property Rights . . . to be usurped and stolen by [defendants]." (Compl. ¶ 113.) Although the Complaint does not say how, presumably Plaintiff alleges that Judge Guadagno did this by ordering Land Options to hold funds in escrow and "manipulated the numbers even interpreting non-existent money, disregarding most clauses in the judgment of divorce[,] including medical expenses and child care expenses, disregarding the evidence (the cancelled checks and ignoring the evidence provided that Swett already stole more than $61,000 from secret bank accounts Swett withheld from the judgment." (Compl. ¶¶ 68, 93.)

Judicial "immunity applies 'however injurious in its consequences [the judge's action] may have proved to the plaintiff'." <u>Gallas</u>, 211 F.3d at 769 (quoting <u>Cleavinger</u>, 474 U.S. at 199-200). In the instant case, Plaintiff alleges that Judge Guadagno allowed the theft of Plaintiff's property through his judicial actions "in his official capacity." (Compl. ¶ 113.) "Disagreement with the action taken by the judge . . . does not justify depriving that judge of his immunity. . . . The fact that the issue before the judge is a controversial one is all the more reason that he should be able to act

state police in accordance with State Policy (Def. Br. 5) is a judicial act, and therefore within the ken of judicial immunity. <u>See</u> <u>Stump</u>, 435 U.S. at 356 ("A judge will not be deprived of immunity because the action he took was in error . . . [or] was done maliciously").

without fear of suit." Stump, 435 U.S. at 363-64; see also Id. at 356 ("A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority.").   Here, Judge Guadagno's actions involved adjudication of a divorce proceeding over which he was presiding and were judicial in nature.  Accordingly, Judge Guadagno is protected by judicial immunity.

### G. Violation of Plaintiff's Sixth and Fourteenth Amendment Rights by Not Allowing the Right to Appointed Counsel

Plaintiff asserts his Sixth and Fourteenth Amendment rights have been violated by Judge Guadagno when "in his official capacity [Judge Guadagno did not allow Plaintiff] the right to appointed counsel." (Compl. ¶ 114.)  Plaintiff asserts that, pursuant to Pasqua v. Council, 892 A.2d 663 (N.J. 2006) he, as an indigent defendant, had a right to appointed counsel at an "impromptu, unscheduled and unplanned hearing before Defendant . . . [where] Defendant decided to address . . . Swett's application for Plaintiff's arrest." (Compl. ¶¶ 65-66.)  Plaintiff alleges that at this hearing, Judge Guadagno "remind[ed Plaintiff] there were consequences of filing an appeal" (Compl. ¶ 66) and that Judge Guadagno "decided to address at this hearing Swett's application for Plaintiff's arrest." (Compl. ¶ 65.)

In Pasqua, the New Jersey Supreme Court mandated that indigent parents "charged with violating a court order must be advised of their right to counsel." Pasqua, 892 A.2d at 678; see also Id. at 672 ("[t]he pre-eminent generalization that emerges from [the] Court's precedents on an indigent's right to appointed counsel is that such a right has been recognized to exist only where the litigant may lose his physical liberty if he loses the litigation") (quoting Lassiter v. Dep't of Social Services, 452 U.S. 18, 25 (1981)).  However, a judge's failure to inform an indigent party of his right

18

to appointed counsel does not extinguish a defendant's claim of judicial immunity.  Pasqua, 892 A.2d at 676-77 (finding both "[judges]  were acting within their jurisdiction and performing functions normally performed by judges, despite their failure to inform plaintiffs of their right to appointed counsel.").  Similarly, even if Judge Guadagno erred at this hearing on Swett's application to have Plaintiff arrested when Judge Guadagno failed to inform Plaintiff of a potential right to appointed counsel, such an error,[11] committed within his jurisdiction and as a judicial function, does not deprive Judge Guadagno of absolute judicial immunity.  See Mireles, 502 U.S. at 11-12; see also Figueroa, 435 F.3d at 439 ("[T]he public policy favoring the judicial immunity doctrine outweighs any consideration given to the fact that a judge's errors caused the deprivation of an individual's basic due process rights") (citation omitted).  Accordingly, I find Judge Guadagno's actions alleged in this count of the Complaint were judicial in nature, and thus protected by judicial immunity.

### H. Plaintiff's RICO Claim

Plaintiff alleges in his Complaint that defendants Land Options, Inc., Apex Financial Group, Inc., Encore Credit Corp., Option One Mortgage Corp., Select Portfolio Services, Inc. (collectively "Financial Defendants"), Judge Guadagno, and Swett participated in a conspiracy against Plaintiff in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, et seq.  To properly plead under RICO, a Plaintiff must allege "'(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity' as well as an injury resulting from the conduct constituting a violation."  Bonavitacola Elec. Contr., Inc. v. Boro Developers, Inc., 87 Fed. Appx. 227, 231 (3d Cir. 2003) (quoting Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 496 (1985)).

---

[11]As stated supra, Plaintiff has a pending appeal in the New Jersey Superior Court, Appellate Division challenging Judge Guadagno's orders and decisions.

Plaintiff asserts Judge Guadagno was an integral part of this nefarious enterprise.  In the Complaint, Plaintiff accuses Judge Guadagno of holding ex parte conversations with Swett, failing to conduct proper hearings, excluding Plaintiff's evidence, violating the doctrine of res judicata by reopening previously litigated matters, and prohibiting Plaintiff from filing motions and presenting defenses in his favor. (Compl. ¶¶ 140-151.)  Judge Guadagno's purpose, Plaintiff alleges, was to ruin Plaintiff financially and emotionally.  As previously stated, judicial immunity extends to all the aforementioned acts alleged by Plaintiff.  Furthermore, "[judicial immunity] applies even if the Judge is acting as part of an alleged conspiracy."Trueman v. City of Upper Chichester, No. 04-5085, 2005 U.S. Dist. LEXIS 23672, at *3 (E.D. Pa. Oct. 12, 2005), aff'd, No. 07-2762, 2008 U.S. App. LEXIS 17767 (3d Cir. July 23, 2008) (quoting Dennis v. Sparks, 449 U.S. 24 (1980)). Thus, Judge Guadagno's involvement in an alleged RICO conspiracy will not defeat a claim of judicial immunity in the instant matter. Irrespective of malice or bad faith, judicial immunity extends to these actions as they are within the Judge Guadagno's jurisdiction and are of a judicial nature.  Accordingly, these actions are protected by judicial immunity.

### III. Plaintiff's State Law Claims

Plaintiff asserts several state law claims against Judge Guadagno, including negligent and intentional infliction of emotional distress, continuous tort, and violation of  New Jersey's Unfair and Deceptive Trade Practices Act. (Compl. ¶¶ 121-28; 133-37).  Jurisdiction over Plaintiff's state law claims is governed by 28 U.S.C.A. § 1367(a), which states in relevant part:

> [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

28 U.S.C.A. § 1367(a).  A district court should decline to exercise supplemental jurisdiction over pendant state law claims "unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." Hedges v. Musco, 204 F.3d 109, 123 (3d Cir. 2000) (quoting Borough of West Mifflin v. Lancaster, 45 F.3d 780, 788 (3d Cir. 1995); see also United Mine Workers of America v. Gibbs, 38 U.S. 715, 726 (1966).  In the instant matter, this Court will exercise supplemental jurisdiction over Plaintiff's pendant state law claims with respect to Judge Guadagno for the sake of judicial economy and convenience. Judge Guadagno asserts a common defense as to all claims alleged by Plaintiff - judicial immunity.  Therefore, the Court need not reach the merits of these claims.  Plaintiff does not allege any additional facts with regards to Judge Guadagno's participation in these claims other than those already determined by this Court to be protected by judicial immunity. (Compl.¶¶ 133-37.); see infra Discussion Part B-G.  Accordingly, Plaintiff's state law claims are dismissed with prejudice.

### IV. Conclusion

For the foregoing reasons as to Defendant Judge Guadagno, Plaintiff's 42 U.S.C. § 1983, RICO, and state claims are dismissed with prejudice.